FILED
CLERK

4/3/2019 4:44 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRAIG CUNNINGHAM, *on behalf*     *     Case No. 17-CV-02080(ADS)
 *of himself and others*          *
 *similarly situated*,            *
                                  *
                                  *
              Plaintiff,          *     Central Islip, New York
                                  *     March 19, 2019
     v.                           *
                                  *
SHORE FUNDING SOLUTIONS,          *
 INC.,                            *
                                  *
              Defendant.          *
                                  *

* * * * * * * * * * * * * * * *

            TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY HEARING
              BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          AYTAN YEHOSHUA BELLIN, ESQ.
                            Bellin & Associates LLC
                            85 Miles Avenue
                            White Plains, NY  10606

For the Defendant:          CLIFFORD B. OLSHAKER, ESQ.
                            Law Offices of Clifford B.
                             Olshaker
                            98-19 37th Avenue
                            Corona, NY  11368

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 10:58 a.m.)

2                THE CLERK:  Calling civil case 17-2080, Cunningham

3      vs. Shore Funding Solutions, Inc.  Please state your

4      appearance for the record.

5                MR. BELLIN:  Good morning, Your Honor. Attan Bellin

6      for the plaintiff, Craig Cunningham.

7                THE COURT:  Good morning.

8                MR. OLSHAKER:  Good morning, Your Honor.  Clifford

9      Olshek for the defendant, Shore Funding Solutions. How are

10     you?

11               THE COURT:  Good morning.  All right. I want to go

12     through the two pending motions. I'm going to make my rulings

13     now.

14               You know, looking to what this case is all about,

15     first of all, I has to do with four calls to the plaintiff

16     using an automatic telephone dialing system, although the

17     defendants contest that.  Text messages were delivered to the

18     plaintiff's cell phone without the plaintiff's prior express

19     consent.  All of this occurred in 2016.

20               And the injury, according to the complaint, is that

21     the -- at least the injuries plaintiff's claiming incurred was

22     that his phone was tied up for that period of time.  His

23     privacy was invaded.  His solitude was disturbed and his time

24     was wasted.

25               So keeping that framework in mind and looking at

3

1    these motions to compel, I'm going through each one of these

2    and issue a ruling.  The ruling itself will be summarized in a

3    an order following this conference, and if you want to

4    substitute rationale, you can order the transcript.

5         I'll go through that now.  It will be in the record,

6    but the conference summary will simply give the rulings.

7         Now, generally, I see the defendant hasn't produced

8    anything in response to the plaintiff's demands.  The

9    defendant objects to the request as unduly burdensome because

10   according to counsel, the proposed discovery would only be

11   relevant if the defendant had used automatic telephone dialing

12   system, or an ATDS as it's referred to here.  And the

13   assertion is that the defendant never used such a system.

14        MR. OLSHAKER:  Can I speak to Your Honor for -- bery

15   briefly?

16        Recently, at the end of February this year, Judge

17   Ross in the Eastern District in Brooklyn decided the case

18   *Duran vs. La Boom Disco*, in which he dismissed a case similar

19   to this, a TCPA case based solely on text messages, as this

20   case is, on the grounds that the easy text platform is not

21   under the TCPA and automatic telephone dialing system.

22        This is the identical texting platform system that

23   the defendant uses and is in question in this case.

24        THE COURT:  Well, it would have been helpful then if

25   you had put in some opposition to any of these motions,

4

1     wouldn't it?

2          MR. OLSHAKER:  The case came out three weeks ago.

3          THE COURT:  Okay.  Well, you certainly could have

4     brought that to my attention, so --

5          MR. OLSHAKER:  Well, I knew about this conference

6     for a while and given the adjournments, I hoped to bring it up

7     now before you made your ruling.

8          THE COURT:  Look, I'm not here to dismiss anything

9     on the merits today.

10         MR. OLSHAKER:  I understand.

11         THE COURT:  All right?  You've been through this

12    before and you said you were going to file for summary and you

13    withdrew your motion for summary judgment.

14        We're not going to play this game that, you know, on

15    the one hand you refuse to produce anything and then you

16    withhold moving forward with summary judgment motion practice.

17        MR. OLSHAKER:  Well, Judge Spatt wouldn't permit me

18    to file the motion.

19        THE COURT:  Well, fine.  So we are where we are.  If

20    you want to move to dismiss at this point, if you want to

21    bring this other case to Spatt's attention, because that's

22    his bailiwicks not mine, feel free.  But today we're going

23    through the rulings on these motions and that's where we are.

24    All right?

25        MR. OLSHAKER:  Fair enough.  Sure.

5

1          THE COURT:  All right.

2          To make out a claim under the TCPA, a plaintiff has

3    to show, first of all, that a defendant called her on her cell

4    phone and this a quote now from the *Rothberg* case.

5          Two, that using an automated telephone dialing

6    system, or prerecorded voice 38 without her consent.  And

7    *Rothberg* is a 345 F.Supp 3d. 466 at 474, Southern District of

8    New York 2018.

9          Courts have deemed a text message a call,

10   quote/unquote, within the meaning of the statute.  See, for

11   example, Kaufman vs. Caulfire, Inc. (ph), 2015 Westlaw

12   6605459, Southern District of California, 2015.

13         Here, in refusing to produce any discovery by

14   categorically denying having used an ADTS, the defendant

15   opposes plaintiff's discovery request by challenging the

16   viability of the plaintiff's claims.

17         Put in another way, the defendant argues that the

18   proposed discovery is not properly discoverable since the

19   defendant didn't violate the statute.  This is decidedly

20   inappropriate.

21         And I know there have been multiple references here

22   to my prior decision in a case called *North Shore Long Island*

23   *Jewish Health System vs. Mulitplan.*  A discovery motion is the

24   proper forum for raising challenges to the viability of a

25   plaintiff's claims. See 325 FRD 36 at 10, Eastern District of

6

1    New York, 2018.  Such challenges should instead be presented

2    in a proper dispositive motion before the district judge.

3            Now in looking first of all to DE-56, and I hope you

4    have a copy of it with you because I have some questions as

5    we're going along here.

6            Keeping in mind that I previously ruled, and I

7    continue to rule that the scope of discovery here will remain

8    New York State's, unless and until there is a class

9    certification motion that is approved.

10           And I know you've asked again, Mr. Bellin, for

11   nationwide discovery.  This is not the time for it.  If and

12   when you get finished with the New York State discovery,

13   you're in a position to apply for class certification.

14           The normal procedure here is at that time if it's

15   approved, then discovery will be reopen and you get the rest

16   of your discovery.  But for now, this is where you are.  All

17   right?  Also keeping in mind that there's a four-year statute

18   of limitations for TCPA cases.

19           The first request, and I'm going to go response by

20   response here, seeks any and all documents, including and

21   without limitations, logs, transmission summaries,

22   confirmation sheets, invoices, billing statements and/or

23   telephone bills which reflect state or otherwise list any or

24   all wireless telephone numbers to which defendant sent or

25   caused to be sent marketing texts on behalf of the defendant

1    from April 7th, 2013 through April 7th of 2017.

2          Now right off the bat this request fails the

3    proportionality standards that went into effect in December of

4    2015 when the federal rules changed. There's no such language

5    anymore as any and all.  Those words are essentially out of,

6    or should be out of any litigator's vocabulary.

7          The requests are to be tailored narrowly to what's

8    essential to prove the claims or to dispute the defenses in

9    the case.

10         Now, which of these laundry list here will show the

11   numbers of the callers who received the same four texts as the

12   plaintiff?

13         MR. BELLIN:  Is that a question to me, Your Honor?

14         THE COURT:  Yeah.  You can stay seated.

15         MR. BELLIN:  Your Honor, I have no idea.  They're

16   the ones who've got those records. It wasn't a laundry list

17   for the purpose of being a laundry  list.

18         It existed because I felt that Mr. Olshaker and his

19   client have been evasive up to this point.  And we really need

20   to know -- this is essentially asking -- if you take away the

21   words any and all, that's fine.

22         But it's essentially asking for lists -- for any

23   documents that they have that show the telephone numbers to

24   which these marketing texts have been sent.

25         And not just these four, Your Honor.  Our position

8

1   is it should be any marketing text because the content of the

2   marketing text is not relevant -- the specific content.

3   Rather, that their marketing text is relevant.

4          THE COURT:  I understand your argument but I am

5   going to narrow this to either the same or substantially

6   similar texts that went out.  That's it.  All right?  That's

7   the limitation that's being placed as we go through the rest

8   of these specific requests.  So --

9          MR. BELLIN:  I understand -- I'm sorry, Your Honor.

10          THE COURT:  Go ahead.

11          MR. BELLIN:  I understand, Your Honor.

12          I think the problem with that is, with all due

13   respect, is that you've limited the discovery to New York

14   State, and now you're limiting the discovery even more.  In

15   terms of making a class, it makes it more and more difficult.

16   I still believe you'd be --

17          THE COURT:  I'm well aware of what I'm doing.

18          MR. BELLIN:  I'm sure you are, Your Honor.

19          THE COURT:  Okay.

20          MR. BELLIN:  That's fine.

21          THE COURT:  So you know, you're not happy with this,

22   you can appeal to the district judge.  All right.

23          MR. BELLIN:  Very  well.

24          THE COURT:  All right.  This is going to be narrowed

25   to documents that the defendant has that show wireless

9

1    telephone numbers to which the defendant sent or caused to be

2    sent the marketing texts from April 7, 2013, through April 7th

3    of 2017.

4             Again, those marketing texts are the same ones that

5    were sent to the defendant, or substantially similar ones, and

6    they are limited to New York State.  And with that

7    modification, I am ordering the defendants to produce those

8    materials.

9             As to number two, which requests all documents

10   sufficient to identify each person or entity by name, address,

11   and phone number, if available, to whose cellular phone the

12   defendant sent or caused to be sent marketing texts on behalf

13   of the defendant from April 7th, 2013 through April 7th of

14   2017.

15            Once again, this is limited to New York.  We're

16   talking about documents that can identify the person or entity

17   by name. I don't even know how they would have an address, but

18   as to the name and the phone number, I will require the

19   plaintiffs to produce that information.

20            As to request number three, copies of all text

21   messages delivered as a result of defendant sending, or

22   causing to be sent out, marking texts on behalf the defendant

23   from April 7th, 2013 through April 7th of 2017.

24            What I will require the defendants to do and, again,

25   keeping in mind this is to New York State, but you are

1    directed to provide copies of the same or substantially

2    similar text messages that were sent to any consumers in New

3    York State for this relevant time period.

4              We're talking about those, as I said, that are the

5    same or substantially similar to that which was sent to the

6    defendant -- excuse me, to the plaintiff.  As modified, those

7    documents are to be produced.

8              Let me just say one additional thing here.  It does

9    not help the court at all that the tenets of the rules that

10   changed in December of 2015 apply to plaintiff here as well.

11             Choosing to repeat verbatim your own boilerplate

12   arguments as to why documents should be produced shows me

13   you're not in compliance with Rule 37.1 either, which is very

14   disheartening to the court.

15             The arguments were to be particularized -- it made

16   it very clear in Rule 37.1 information I provided in the prior

17   conference minute orders, your objections be particularized to

18   each request that was made here.  Not this boilerplate

19   repetition that appears throughout the course of this

20   particular motion and not parroted from one to the other.

21             You know, in some respects, I could have rejected

22   this motion on that basis alone, but I find that methodology

23   is about as helpful as what I got from the defendants in the

24   responses here.

25             Number 5.  Request all documents that indicate the

1      days and/or times that the defendant sent or caused to be sent

2      out marketing texts on behalf of the defendant from April 7th,

3      2013 through April 7, 2017.

4              I'm not going to require them to respond to this.

5      If the other responses are made properly, you should get that

6      information from those responses. Nor do I find the time that

7      a marketing text was sent out to be material in any way to

8      what's being raised in this case.

9              Number 9.  All documents indicating how wireless

10     numbers of cellular phones were obtained to which defendant

11     sent or caused to be sent out marketing texts on behalf of

12     defendant during the period from April 7, 2013 to April 7,

13     2017.

14             You know, I'm not even sure what this means, but I

15     can tell you this. I have an inkling of what you're trying to

16     get at here and certainly that's something that should have

17     been posed in an interrogatory and I'm -- if it wasn't, then

18     this is something obviously you can ask at a deposition.  But

19     it's not a proper, I think, subject of a document request.  So

20     I'm not requiring to respond further to that one.

21             Number 11, all documents indicating how defendant

22     and/or the persons on defendant's behalf chose to which

23     persons and/or wireless telephone numbers to send or cause to

24     be sent marketing texts on behalf of defendant from April 7th,

25     2013 through April 7th, 2017.

1          The same principle applies here.  This should have

2     been posed as an interrogatory, if it was going to be posed at

3     all.  You can take it up at a deposition, but I'm not

4     requiring the defendants to do anything further with this one.

5          Number 12, all documents which relate or refer to

6     the design, the competition -- excuse me, composition and/or

7     content of the text messages attached as Exhibit A to the

8     complaint, or any identical or substantially similar

9     documents.

10         First of all, I have no idea what the design has to

11    be with any of the claims the plaintiff has raised here.  I'm

12    happy to hear.

13         MR. BELLIN:  Your Honor, what it has to do --

14         THE COURT:  Please stay seated. I need you on the

15    microphone.

16         MR. BELLIN:  I'm sorry.  Courts have looked to

17    determining whether an entity or person is responsible for

18    sending out texts or faxes.

19         One of the factors they look at is who designed the

20    text and/or faxes. Numerous courts have done that and that's

21    the reason why that's relevant to this case.

22         THE COURT:  So why didn't you ask that in an

23    interrogatory. I mean, it makes more sense.  If you're trying

24    to get at who did this so that you can -- or somehow the

25    design is going to magically tell you who did it, I'm losing

1    as far as a document request is concerned.

2            MR. BELLIN:  Well, Your Honor, the fact that

3    something can be asked in an interrogatory is not a reason

4    that the defendant is not required to produce documents that

5    reflect the answer to that.

6            THE COURT:  I didn't say that.  I'm telling you I'm

7    not even sure I understand what it is you're looking for and

8    how it's related here.

9            MR. BELLIN:  Well, for example, emails about Gina

10   Montefiore, I want you to design the marketing texts that were

11   going to be sent out on such and such a date, or here is my

12   design of the text.  What do you think of it?  It shows --

13   that's the sort of thing we were looking to, Your Honor.   And

14   that is relevant to who is responsible for sending these

15   things out.

16           THE COURT:  Well, aren't you going to find out who

17   sent them out by virtue of the other requests that you've made

18   here, if they're responded to?

19           MR. BELLIN:  Your Honor, one of the -- well, one of

20   the issues though is they had hired someone else to do it, to

21   actually physically send out the materials, that one of the

22   factors that courts look at is how involved the party was in

23   creating the text, et cetera.

24           THE COURT:  Look if you are satisfied with modifying

25   this to say documents which show who designed -- if there's

1    somebody's name attached to something, the content of the text

2    message, I don't have a problem with that.

3              MR. BELLIN:  That would be fine, Your Honor.

4              THE COURT:  All right.  Then as modified, I will

5    require the defendant to answer it.

6              Number 13, all documents which relate or refer to

7    the design, composition and/or content of all text messages

8    that were delivered, et cetera. I mean, to me this poses the

9    same issue as number 12.

10             MR. BELLIN:  Yes, Your Honor. I agree.

11             THE COURT:  All right.  So I'm not going to require

12   them to respond further. I've already directed them to respond

13   to 12 as it's modified.

14             16, all policies of general liability insurance

15   under which you are the insured and the responses defendant

16   does not have insurance that covers TCPA claims.

17             Well, first of all, Rule 26(a) makes it very clear

18   that you're required to turn over an insurance policy, even if

19   it's a general liability policy, to opposing counsel.  And

20   obviously that wasn't done here.

21             I'm going to draw your attention to a couple of

22   cases, the first one is *Calabro*, C-A-L-A-B-R-O, vs. *Stone,* 224

23   FRD 532. It's an Eastern District of New York case from 2004.

24   This is a decision of Magistrate Judge Go where this issue

25   arose.

1            And she says here at -- let's see -- at page 533.

2    "Counsel, for defendant argues that the insurance policies

3    sought are not relevant.  Rule 26(b)(1) of the Federal Rules

4    of Civil Procedure permits discovery of any matter not

5    privileged that's relevant to the claim or defense of any

6    party."

7            While counsel may be correct that the policies

8    sought contain enforceable provisions excluding from your

9    coverage the accident at issue here, the plaintiff is not

10   limited to counsel's say so in making this determination.

11           As the automatic disclosure requirements of Rule

12   26(a)(1)(D) made clear, plaintiffs are entitled to inspect

13   "any insurance agreement under which any person carrying on an

14   insurance business may be liable to satisfy part or all of a

15   judgment."

16           I also draw your attention to the case, *Certain*

17   *Underwriters at Lloyds vs. National Railroad Passenger*

18   *Corporation*. This is a 2016 Westlaw 2858815.  This is a

19   Eastern District case from May of 2016. It's Judge Mann's

20   decision, which holds the same principles I just recited from

21   Judge Go about inspection of the insurance policy.

22           And then the third one is *Suffolk Federal Credit*

23   *Union vs. Cumis Insurance Society, Inc.*  This is a -- it cites

24   270 FRD 141.  This is an October, 2010 decision of Judge

25   Boyle, again, standing for the same principle.  And so you're

1    to turn over the insurance policy.

2         Number 18, all documents that pertain or relate to

3    the persons or entities who sent or caused to be sent out

4    marketing texts on behalf of the defendant from April 7th,

5    2013 through April 7th of 2017.

6         Although I find this somewhat ambiguous and

7    certainly overly broad, if you're trying to get the names of

8    the people involved, that's one thing. I assume that's what

9    you're trying to do here and my question is why did you not

10   have those names as part of the Rule 26(a) disclosures from

11   the defendant.

12        MR. OLSHAKER:  Are you asking that to me, Your

13   Honor, or --

14        THE COURT:  I'll ask you first.

15        MR. OLSHAKER:  Your Honor, first of all, we're also

16   trying to find out the documents because documents that

17   reflect their positions in the company, you know, we don't

18   know who's involved in actually physically sending these

19   things out.

20        And so it's not only their identities, but also

21   their positions within the company.

22        But that said, I don't know that defendant -- I

23   don't know that they've identified everybody in the Rule 26(a)

24   disclosures.  So I put this in here. If they have identified

25   them, then that's fine, but I still want to know more about

1    them.  Who they are, what their position is in the company,

2    and I think that the documents reflecting that are something

3    they should have to produce.

4              THE COURT:  All right.  Well, to your recollection,

5    in terms of what you did with the Rule 26(a) disclosures --

6              MR. OLSHAKER:  I believe that in the beginning with

7    disclosed it.  It was a woman named Gina Montefiore, who's the

8    defendant's operations manager, who's the sole party

9    responsible within Shore Funding Solutions to generate the

10   text, and that's been disclosed from the very beginning.

11   There really is no one else.

12             THE COURT:  All right.

13             MR. OLSHAKER:  And I don't have any documents to

14   support that.  She's just the operations manager.

15             THE COURT:  All right.  But that information is

16   spelled out in the Rule 26(a) disclosure, not only her name

17   but what her position is?

18             MR. OLSHAKER:  I don't have it in front of me.  I

19   don't recall.

20             THE COURT:  Okay.  Well, here's what you're going to

21   do.  Go back to your Rule 26(a) disclosures and to the extent

22   that she's identified, I want you to make sure that you've

23   amended this, if it's not included, to reflect her position,

24   first of all, and what you just explained as to really what

25   would be responsive to this particular request, if this is the

1      only individual who is involved.

2                  MR. OLSHAKER:  Okay.

3                  THE COURT:  All right?

4                  MR. OLSHAKER:  Yeah.

5                  THE COURT:  All right.  Down to number 19.

6                  All documents that contain or refer to the

7      requirement under the TCPA, or any other law, regulation, or

8      ordinance to obtain prior express permission or invitation to

9      make telephone calls to cellular phones.

10                 I think this is an impossible document request to

11     respond to, frankly. Again, to me this is something -- you're

12     trying to find out who knew about the requirements and whether

13     they were being implement properly.

14                 To me that's something that should have been asked

15     in an interrogatory.  Again, if you're going to do a 30(b)(6)

16     deposition or a fact deposition, you've got the opportunity to

17     ask that at the deposition, and that's where we're going to

18     leave it.

19                 If you feel after doing that that somehow you're

20     still being deprived of information, then you can come back

21     and renew your request.  All right?

22                 Number 20.  All documents that refer to the TCPA or

23     any other law, regulation or ordinance concerning the making

24     of telephone calls to cellular phones.

25                 You know, we're kind of starting at the universe and

1    working our way in here. I really think this falls into the

2    same vein as what I just addressed in number 19, and that's

3    where I'm going to leave it.

4           Take it up at a deposition and if there's still an

5    issue after that, you can come back and seek further relief.

6           MR. BELLIN:  Your Honor, may I just be heard for a

7    moment?

8           THE COURT:  Go ahead.

9           MR. BELLIN:  I think the difficulty is that I've had

10   other cases where we've had situations where they say they

11   don't know, or they didn't know about the TCPA, but then you

12   do discovery and you find emails that have been sent back and

13   forth about the TCPA, or they've gotten sued in other cases

14   through the TCPA.

15          And I think, frankly, that just asking a question at

16   a deposition will not -- it's not -- will not be sufficient.

17          And there's no way for me to know, even at the

18   deposition when they say well, we never heard of it, that

19   that's actually the case.

20          If they have emails about it, if they have

21   documentation about it, if they've been sued before under the

22   TCPA, I think I have a right to those documents to show that

23   that they had knowledge to show that they did so, sent these

24   texts out willfully or knowingly.  And a question at a

25   deposition doesn't satisfy that, in my view, Your Honor.

1        THE COURT:  Well, if you're going to -- my guess is

2   there aren't any policy statements floating around about the

3   TCPA with respect to what I know of this case at this point.

4        To the extent there are any emails where the parties

5   are talking to each other, named parties within the

6   defendant's business about the TCPA regulations, in that time

7   frame, then I will amend this accordingly and have the

8   defendant respond, but that's it for now.  All right?

9        MR. BELLIN:  Thank you, Your Honor.

10       THE COURT:  21.  All documents that indicate or

11  reflect the manner or method by which you received express

12  permission or invitation to send or cause to be sent marketing

13  texts on behalf of defendant from April 7, 2013 through April

14  7, 2017.

15       I have no idea what it is you're really looking for

16  here.

17       MR. BELLIN:  Your Honor, what we're looking for is

18  emails or documents that reflect getting permission --

19       THE COURT:  Reflect what position?

20       MR. BELLIN:  I'm sorry.  Permission.

21       THE COURT:  Okay.

22       MR. BELLIN:  For example, do they have signed

23  documents that say we hereby give you express permission to

24  send us marketing texts, or do they have documents that say we

25  are not going to be asking for permission because we don't

1    think we want to, or things of that nature.

2         Their claim is that -- they must claim that they

3    have prior express permission or invitation.  Where do they

4    have that?  What reflects that?  What shows how they got it?

5    Those are keys issues in this case, Your Honor. And I think

6    they should be required to produce documents reflecting that,

7    if there are any.

8         THE COURT:  All right.  Run this by me again as to

9    who's asking permission for what.  And slow down.

10        MR. BELLIN:  I'm sorry, Your Honor. I'm from New

11   York. I speak a little quickly.  I apologize.

12        The TCPA requires that before an entity send out

13   marketing texts, that they get prior written express

14   permission or invitation to do so.

15        And so the defendant, in order to have a defense,

16   will have -- prior of having obtained written, prior express

17   invitation or permission, must have evidence of that prior

18   express written investigation or permission.

19        THE COURT:  Is that to send out any text?

20        MR. BELLIN:  That's to send out marketing texts,

21   which is what these are.

22        THE COURT:  Okay.

23        MR. BELLIN:  Because they're marketing rates on

24   loans and so forth.  And that's under 2013 FCC rule that

25   courts have cited since then.

22

1      And so they -- if they have them, they have to show

2  us in the documents that reflect that prior express written

3  consent, if that's what they're claiming they have.  They have

4  to claim that, otherwise their texts violate the statute.

5      MR. OLSHAKER:  Your Honor, we did turn over the

6  consent that his client gave us to send text messages to him

7  in the handwritten application for funding when he applied for

8  a loan from Shore Funding Solutions, as well as the electronic

9  consent that he gave prior to receiving the first text.

10      Your Honor --

11      THE COURT:  Well, hang on.  Let me ask a question.

12      I understand that with respect to your client you

13  say you've turned this over.

14      When you're telling me that these are documents that

15  show that the defendant obtained express permission, from

16  whom?  From each consumer that they send this to?

17      MR. BELLIN:  If they're claiming -- we're entitled

18  to know if they're -- based upon what they're saying they get

19  the prior express written consent.

20      And so it's not that they -- if their position --

21  they may have used, for example, a general form.  There are

22  cases where a defendant said look, we have used this form that

23  says give us permission, and that's what everybody sent us.

24      THE COURT:  Yeah, but hang on.  You still didn't

25  answer my question.  Permission from whom?

1          MR. BELLIN:  From the class members.

2          THE COURT:  From --

3          MR. BELLIN:  The potential class members.

4          THE COURT:  All right.  Here's what I will permit,

5     and that is any documents that the defendant has that shows

6     that the defendant obtained express permission to send these

7     marketing texts from anyone who would be potentially a member

8     of the New York class here for this period of time.

9          And, again, we're talking about -- just so we're

10    very clear here, the same texts or substantially similar texts

11    that the defendant received.  All right.

12         MR. OLSHAKER:  Thank you, Your Honor.

13         THE COURT:  To the extent it's modified and,

14    hopefully, clarified there, I will require the defendants to

15    respond.

16         22, all documents that indicate or reflect the

17    manner and method by which you received the revocation of

18    prior express permission or invitation to send or cause to be

19    sent out marketing texts, blah, blah, blah.

20         What you're really looking for I take it is if

21    there's actually a response from a potential class member that

22    say don't send me any more of these.

23         MR. BELLIN:  That's correct, Your Honor.

24         THE COURT:  Okay.  So the extent that's what you're

25    asking for, I'm modifying 22 and directing the defendant to

1 respond. 23 seems to be the same issue.

2 MR. BELLIN: Yes, Your Honor.

3 THE COURT: So if they're going to respond to 22, I

4 don't think they need to respond to 23.

5 MR. BELLIN: Yeah. 21. It's the same issue as 21.

6 That's right, Your Honor.

7 THE COURT: 21. Excuse me

8 24 -- I'm sorry. No. 24, all records and documents

9 that you contend evidence or show your receipt of the

10 revocation.

11 This seems to me, again, to be covering the exact

12 same wording as 23.

13 MR. BELLIN: Yes, Your Honor. That's fine.

14 THE COURT: All right. So no response necessary

15 there as to duplication.

16 26, all documents in your possession, custody or

17 control which evidence a prior established business

18 relationship between you and with each person or entity to

19 whose -- excuse me, particular cell phone you sent or caused

20 to be sent out marketing texts on behalf of the defendant.

21 Again, you need to define for me exactly what it is

22 you're looking for here.

23 MR. BELLIN: Your Honor, we can deny this one. It's

24 fine. I realize it's not necessary.

25 THE COURT: All right. So I'll put it down you're

1    withdrawing this, all right?

2              MR. BELLIN:  Yes, Your Honor.

3              THE COURT:  And 29, I have a note here.  I can't

4    decipher this it says.

5              All documents in your possession, custody or control

6    that pertain and relate in any way to text messages that were

7    delivered to cellular phones or people with whom the defendant

8    had no prior business relationship, as a result of you sending

9    or causing to be sent out marketing texts.

10             MR. BELLIN:   I withdraw that. I withdraw that

11   request, Your Honor.

12             THE COURT:  All right.  31, all records or

13   documents, including, but not limited to, purchase orders,

14   invoices and/or cancelled checks that refer or relate to the

15   source of the names and/or wireless numbers of the persons in

16   the United States to whom you sent, or caused to be sent,

17   marketing texts of behalf of the defendant from that time

18   period. It's very unclear to me what you're looking for.

19             MR. BELLIN:  Your Honor, what I'm looking for is the

20   case law says that if -- one of the ways of showing that in a

21   class case that there has not been prior express consent

22   obtained is to show that the defendant purchased the

23   commercial list, or purchased -- of companies and/or fax

24   numbers and used that list to send out the texts.

25             And so that's what I'm trying to get here.  Did they

1    purchase these numbers, where did they get the numbers from?

2    Because if they did get the from some sort of other entity,

3    and purchased them, or just got lists that were available to

4    them, that would be evidence classwide of them having not

5    received prior express consent.

6            MR. OLSHAKER:  Your Honor, I would say that this is

7    unnecessary because we're already being required to turn over

8    any consent, any written consent that we have for the members

9    of the potential New York class.

10           I don't see why this request -- I don't see how this

11   request moves anything along.

12           THE COURT:  Well, he's looking for the source of the

13   information.

14           MR. OLSHAKER:  My client --

15           THE COURT:  Basically, how your client got the

16   information to send these out to specific people in the first

17   instance.  That's --

18           MR. BELLIN:  Yes, Your Honor. That's correct.

19           MR. OLSHAKER:  And I would say it's unncessary.

20   They either have the consent, which we'll produce, or they

21   don't have it.

22           MR. BELLIN:  Well, if they're willing to concede

23   that if they don't produce consent for -- the written consent

24   that the party hasn't consented fine.  But I have not -- get

25   any such concession.  So I have a right to be able to prove

1    this in a variety of different ways.

2              THE COURT:  All right.  Well, you want to enter into

3    a stipulation to that effect?

4              MR. BELLIN:  No, not at this point.

5              THE COURT:  Okay.  All right.  Then we're going to

6    modify this.  And to the extent that your client has any

7    documents that show the purchase of a list or having obtained

8    a list of the name and numbers of these folks to whom you sent

9    out the marketing material in that period for the State of New

10   York, I'll require you to turn that information over.

11             34, all documents containing the names and addresses

12   of witnesses, or potential witnesses regarding your sending or

13   causing to be -- causing to be sent marketing texts. I mean,

14   this to me is so -- I have no clue.  It makes no sense to me.

15   What are you trying to get at here?

16             MR. BELLIN:  I'm just trying to get at -- Your

17   Honor, if for them to identify all the witnesses.  They don't

18   have to send to me all the documents.  I don't know if from

19   Rule 26(a) they did or they did not.

20             THE COURT:  All right.

21             MR. BELLIN:  If they did, that's fine.  If they did

22   not, that's what the discovery request is for.

23             THE COURT:  Are you willing to make a representation

24   here that you turn over the information that was necessary in

25   your Rule 26 disclosures?

1          MR. OLSHAKER:  Yes, I will.

2          THE COURT:  All right.  Then I'm not going to

3     require anything else.

4          35, all documents referring, relating or pertaining

5     to any person to whom the text message is attached as Exhibit

6     A to the complaint of substantially similar were delivered by

7     your sending, or causing to be sent, marketing texts on behalf

8     of the defendant.

9          MR. BELLIN:  I withdraw that, Your Honor.  That's

10    fine.

11         THE COURT:  All right.

12         MR. BELLIN:  And number 36 I withdraw as well.

13         THE COURT:  All right.

14         38, all documents relating to any defenses the

15    defendant has in this case.  And this says the defendant

16    objects to this request and that it seeks documents covered by

17    the attorney/client privilege.

18         Now to the extent that there are any documents that

19    the defendants intend to introduce at trial to support their

20    affirmative defenses, particularly the factual basis for those

21    defenses, you're required to turn those over or be precluded

22    from using them going forward.

23         So the choice is yours.  You either produce them or

24    I -- you're going to put in the orders here if they're not

25    produced, you're precluded from using them at trial.

1          MR. OLSHAKER:  We have turned over to the plaintiff

2     early on in this case the application that his client sent in

3     for funding, which we believe shows his prior express consent

4     to receive text messages.

5          THE COURT:  That's the only affirmative defense

6     you're raising here?

7          MR. OLSHAKER:  No, no.  And also that the texting

8     system that they use is not under the law an automatic

9     telephone dialing system. I'm not sure what documentary

10    evidence I can produce that would support that defense.

11         THE COURT:  Well, you should go back and think about

12    if you were actually ready for trial and putting your exhibit

13    list together exactly what would be on it in this regard.

14         MR. OLSHAKER:  Okay.

15         THE COURT:  And you're required to produce that.

16    And as I said, if you don't, you'll be precluded from doing

17    it.

18         And secondly, to the extent that you're claiming

19    that any documents are being withheld in this area on the

20    grounds of privilege, then you've got to provide a privilege

21    log.  Did you do that?

22         MR. OLSHAKER:  No, Your Honor.

23         THE COURT:  All right.  So a privilege log goes

24    along with this.

25         Number 40.  Any and all documents, including, and

1    without limitation, logs, transmissions, text messages,

2    confirmation sheets, invoices, billing statements or telephone

3    bills, emails which reflect, state or otherwise list any or

4    all of the telephone number and/or other identifying

5    information of recipients of text messages that were delivered

6    by you, or anyone acting on your behalf, by sending, or

7    causing to be sent, marketing texts on behalf of defendants

8    from April 7, 2013 through April 7, 2017, who requested to no

9    longer receive text messages from the defendant.

10           I mean, by the time I got to the end of this I

11   didn't know what the beginning was.

12           MR. BELLIN:  I'll withdraw it, Your Honor.

13           THE COURT:  All right.  I mean, to the extent that

14   anybody sends written notes, messages, et cetera back to the

15   defendant that they didn't want to receive text messages any

16   longer, certainly that would be relevant.  But that's a much

17   more defined category than what you've got here so --

18           MR. BELLIN:  Yes, Your Honor.

19           THE COURT:  I'm marking that withdrawn.

20           43, all documents that contain, reflect or concern

21   the scripts, contents or wording of the text messages which

22   were delivered as a result of the defendant sending, or

23   causing to be sent, marketing texts on behalf of the defendant

24   from April 7, 2013 through 2017.

25           MR. BELLIN:  I'll withdraw that.  That's covered by

1       the previous order that Your Honor did.

2               THE COURT:  All right.  44, all documents which

3       reflect the number of telephone calls the defendants or caused

4       to be made to cellular phones which were delivered as a result

5       of defendants sending of causing to be sent marketing texts on

6       behalf of the defendant from April 7, 2013 through April 7,

7       2017, which delivered the following text message or any

8       substantially similar message, "Whether Shore Funding has

9       funded you recently, or in the past, you're always eligible

10      rates are at an all time low.  Text back for info.  Funds by

11      the weekend."

12              There's a series of these that ask for the same --

13      the first part of the request is the same and it's only the

14      text message itself that's changed.  And that is for 44, 45,

15      46.  And so looking at this, this needs to be modified. I

16      think I understand what you're looking for.

17              To the extent that this -- that there are documents

18      that reflect the number of marketing texts with the same

19      message, or substantially the similar message as was texted to

20      the plaintiff -- and again, we're addressing this to the New

21      York group for now -- documents which reflect the number of

22      those marketing texts, I will require you to turn over.

23              The rest of the language in here is, to me,

24      completely unncessary. I think that's what you're looking for,

25      correct?

32

1          MR. BELLIN:  Yes, it is, Your Honor.

2          MR. OLSHAKER:  I'm sorry. I'm not clear.  The

3    documents --

4          THE COURT:  If you have any documents that show the

5    number of marketing texts, the number, with the -- that were

6    sent out, basically, containing the same text message, or

7    substantially a similar text message, as went to the

8    plaintiff, within New York State.  You're to produce that

9    information.

10         MR. OLSHAKER:  Okay.

11         THE COURT:  And that goes for the three of them, 43,

12   45 and 46.

13         Now continuing on here to the end of DE-56.  You ask

14   for all discovery deadlines to be extended by 90 days.  Ipso

15   facto, that's happening one way or the other.

16         So -- in fact, the discovery deadlines are on hold

17   for the moment until I can be assured that there's been

18   compliance with the orders I'm issuing today.

19         Let me go over then to 60, DE-60. Some of these

20   we've already addressed, so let me just go through this.

21         Document request here no. 17 is almost identical to

22   no. 18, and I've already ruled on that one.  The same ruling

23   applies.

24         MR. BELLIN:  Yes, Your Honor.

25         THE COURT:  That takes me over to 41.  Again, to me

1    -- well, let me put it this way.  I will require the defendant

2    to respond but with a modified Rule 41 and here's what the

3    modification should be.

4            Documents including manuals, instructions,

5    descriptions, purchase orders or receipts for the machine,

6    device or software that the defendant used to send out the

7    marketing texts on behalf of the defendant in that time frame.

8    All right?  That's key here, obviously, in light of your

9    primary defense in the case.

10            Number 42.  All documents which describe or relate

11   to how the defendant used or caused to be used any machine,

12   device, software or any equipment used in conjunction with

13   such machine, device or software to send to cause to be sent

14   marketing texts, et cetera here.

15            You know, you get the response to the one before

16   that, then I think that's the information that you take to the

17   deposition and pursue further in terms of getting at what

18   you're looking for in 42 here.

19            I mean, to me this is another one that should have

20   been asked in an interrogatory, but you certainly had the

21   opportunity to pursue it at a deposition, specifically if you

22   get the proper response to the interrogatory before it.

23   So for the moment, I'm not requiring them to respond further

24   to 42.

25            47, all documents which contain, reflect or concern

1      the name of the internet provider, if any, used by the

2      defendant and or anyone working on the defendant's behalf to

3      make telephone calls to cellular phones to deliver text

4      messages.

5              I need to know why you need this.

6              MR. BELLIN:  Because I'm going to need to know if

7      there are -- from that provider if there are records that show

8      to whom the calls were made.

9              In other words, the defendant may say well, these

10     are the calls that I made, but I made -- but we may find from

11     subpoenaing documents from the internet provider that other

12     calls were made.  That they haven't sent them to us.

13             THE COURT:  Well, are you claiming that they used an

14     internet provider to send out these messages?

15             MR. BELLIN:  I'm not sure, Your Honor.  I'm not sure

16     at all. I don't have any of the information because none of it

17     was turned over.

18             THE COURT:  Well, do you know the answer to that

19     question.

20             MR. OLSHAKER:  I do. He's referring to calls.  This

21     is not a call case.  This solely a --

22             THE COURT:  It's a text.

23             MR. OLSHAKER:  It's a text case.  And I turned over

24     the name of the internet service provider long ago to them.

25             THE COURT:  All right.  If you turned over the

1    internet service provider's name, I'm not going to require

2    them to do anything else at this point.

3              MR. BELLIN:  Okay, Your Honor.

4              THE COURT:  You can -- again, that's an issue. If

5    you wish, you can take up at a deposition.

6              All right.  I've already answered the question

7    raised about the -- the request raised here about nationwide

8    discovery.

9              I am not going to impose sanctions at this point,

10   but let me just make this very, very clear.

11             Mr. Olshaker, I'm giving you and your client until

12   April 12th to supply the documents and information that we

13   went through this morning in these two motions.

14             And I'm cautioning you that if I find there's been

15   non-compliance, or a lack of production, I'm going to start

16   imposing a daily fine on day 22 and then I'm going to have you

17   and your client in here for a hearing.

18             And so I expect you and your client to take this

19   very seriously and to do what I've instructed you to do today.

20             MR. BELLIN:  As soon as I leave here, I'm headed

21   there to go over this with them.

22             THE COURT:  Good.  All right.  That takes care of

23   the two motions.

24             What I want to do now is set up a telephone

25   conference with you for very shortly after this 21-day period

1    is up so that I can get an assessment of where things are.

2            So if you have your calendars -- I'd like to put

3    this on for -- let me just see here.  April 19th -- no, no,

4    no.  Never mind.  I don't want to interfere with anyone's

5    religious observances.  So let me just see.  April 23rd at

6    10:30 for a telephone conference.  Does that work?

7            MR. OLSHAKER:  Yes.

8            MR. BELLIN:  Yes, Your Honor.  Thank you, Your

9    Honor.

10           THE COURT:  Mr. Olshaker?

11           MR. OLSHAKER:  That's fine.

12           THE COURT:  Okay.  All right.  April 23rd, 10:30.

13   Mr. Bellin, I'm going to ask you to be responsible for

14   initiating that call, all right?

15           MR. BELLIN:  Yes, Your Honor.

16           THE COURT:  You'll get Mr. Olshaker on the phone and

17   call through to chambers.

18           All right. I'm  holding the other discovery

19   deadlines in abeyance until I know these issues have been

20   resolved and then we'll put an amended schedule in place.

21           MR. OLSHAKER:  Just to be clear, Your Honor, all of

22   the discovery that we'll be producing is subject to the

23   confidentiality order that was put into this case early on?

24           THE COURT:  That's fine.

25           MR. OLSHAKER:  Okay.

1          THE COURT:  I mean, whatever is appropriate under

2     the order, is under the order, all right?

3          All right.  Is there anything else we need to

4     address today while I have you both here?  Mr. Bellin, let me

5     start with you?

6          MR. BELLIN:  Nothing else, Your Honor.  Thank you

7     very much.

8          THE COURT:  All right.  And Mr. Olshaker, anything

9     further?

10          MR. OLSHAKER:  Nothing, Your Honor.

11          THE COURT:  All right.  We'll get the order up as

12     soon as we can and, hopefully, by the end of the day tomorrow

13     and you'll proceed from there.  All right?

14          MR. OLSHAKER:  Thank you.

15          MR. BELLIN:  Thank you very much.

16          THE COURT:  If you want the more amplified verison

17     of the record, you're certainly free to order a transcript.

18     My courtroom deputy can tell you what to do, all right?

19          MR. BELLIN:  Thank you, Your Honor.

20          THE COURT:  All right.

21              (Proceedings concluded at 11:51 a.m.)

1          I, CHRISTINE FIORE, court-approved transcriber and

2     certified electronic reporter and transcriber, certify that

3     the foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7

8     _____          March 25, 2019

9        Christine Fiore, CERT

10             Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25